Filed 12/17/14

<u>**CERTIFIED FOR PARTIAL PUBLICATION**</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>       v.<br><br>RANDY LYNN PAYNE,<br><br>    Defendant and Appellant. | F067838<br><br>(Super. Ct. Nos. SUF20408 &<br>SUF20409)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Merced County.  Mark V. Bacciarini, Judge.

Richard M. Doctoroff, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Catherine Tennant Nieto, Deputy Attorneys General, for Plaintiff and Respondent.

---

\*      Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III of the Discussion and the concurring opinion.

**SEE CONCURRING OPINION**

# INTRODUCTION

The Three Strikes Reform Act of 2012 (hereafter Proposition 36 or the Act) created a postconviction release proceeding for third strike offenders serving indeterminate life sentences for crimes that are not serious or violent felonies. If such an inmate meets the criteria enumerated in Penal Code section 1170.126, subdivision (e), he or she will be resentenced as a second strike offender unless the court determines such resentencing would pose an unreasonable risk of danger to public safety.[1] (§ 1170.126, subd. (f); *People v. Yearwood* (2013) 213 Cal.App.4th 161, 168.)

After the Act went into effect, Randy Lynn Payne (defendant), an inmate serving a term of 25 years to life following conviction of a felony that was not violent (as defined by § 667.5, subd. (c)) or serious (as defined by § 1192.7, subd. (c)), filed a petition to have his sentence recalled and to be resentenced. Following a hearing, the trial court found defendant "present[ed] an unreasonable risk of danger to public safety if released."

In the published portion of this opinion, we hold the People have the burden of proving, by a preponderance of the evidence, facts on which a finding that resentencing a petitioner would pose an unreasonable risk of danger to public safety reasonably can be based. Those facts are reviewed for substantial evidence. We further hold, however, that the preponderance of the evidence standard does not apply to the trial court's determination regarding dangerousness, nor does section 1170.126, subdivision (f), create a presumption of resentencing. The ultimate decision — whether resentencing an inmate would pose an unreasonable risk of danger to public safety — instead lies within the sound discretion of the trial court. In the unpublished portion of the opinion, we conclude recently enacted section 1170.18, subdivision (c) does not modify section 1170.126, subdivision (f). Finding no abuse of discretion, we affirm.

---

[1] Further statutory references are to the Penal Code unless otherwise stated.

## FACTS AND PROCEDURAL HISTORY

On February 10, 1996, defendant was observed stealing several cases of motor oil from a convenience store/gas station in Merced.[2] He subsequently led a California Highway Patrol officer in a pursuit on Highway 99. Defendant drove at speeds well over 100 miles per hour, sometimes traveling partly on the center divider and other times traveling on the shoulder. His driving forced other vehicles to move out of his way to avoid collision. As defendant approached the Livingston city limits, he drove onto the shoulder to pass vehicles stopped at a red traffic light. Defendant lost control of the car, flipped over, and struck a power pole. The car had been stolen.

On August 12, 1996, a jury convicted defendant of two felonies: evading arrest while operating a motor vehicle (Veh. Code, § 2800.2) and petty theft with prior theft convictions (§§ 488, 666).[3] Defendant was found to have three prior serious or violent felony convictions within the meaning of the three strikes law. On April 22, 1997, he was sentenced to 25 years to life in prison.

On or about December 21, 2012, defendant filed a petition under section 1170.126. He represented he was statutorily eligible for such relief, and argued he should be resentenced to a second strike term of 48 months in prison and be released from custody.

The People opposed the petition. They pointed to defendant's 14-year-long record of criminal convictions, which included three strike convictions (one for robbery and two for residential burglary); the high risk of danger to others posed by his commitment offense; and defendant's admission, to the probation officer, that he had a drug problem.

---

[2] The facts of defendant's commitment conviction are derived from our opinion in *People v. Payne* (May 26, 1998, F026894) [nonpub. opn.], of which we have taken judicial notice by separate order.

[3] The jury was unable to reach a verdict on a count charging defendant with unlawful taking of a motor vehicle. (Veh. Code, § 10851.)

3.

The People asserted defendant's conduct in prison had been poor, as he had violated prison disciplinary rules on a number of occasions. The People argued that, even after participating in Narcotics Anonymous and Alcoholics Anonymous programs over the years, defendant incurred disciplinary write-ups for "narcotic diversion" — diverting morphine medication he was to swallow — and possession of alcohol, most recently in 2013. The People further argued that, if defendant were released, he would face difficulty earning sufficient income by lawful means, as his prison records revealed his lack of marketable trade skills and lack of education. Based on the foregoing, the People asserted the trial court should find resentencing defendant would pose an unreasonable risk of danger to public safety.

The petition was heard on August 5, 2013.[4] The court considered its own files in the matter, as well as defendant's records — his "central file" — from the California Department of Corrections and Rehabilitation (CDCR).

Information in defendant's CDCR records included the probation officer's report for defendant's commitment offenses. It showed defendant, who was born in 1963, had an adult criminal conviction record dating back to 1982. Between 1982 and 1996, he incurred nine misdemeanor convictions for crimes that included burglary, petty theft with a prior conviction, and carrying a concealed weapon on his person; and seven cases in which he was convicted of one or more felonies that included multiple burglaries and robbery.[5] Defendant told the probation officer he dropped out of high school; started

---

[4]    Because the judge who imposed defendant's third strike term was retired, the matter was heard by a different judge. (See § 1170.126, subd. (j).)

[5]    The robbery conviction arose out of an incident in which defendant apparently believed he was reclaiming a bicycle stolen from him. Defendant and the victim argued over ownership of the bicycle. Defendant said he was going back to his truck to get something. When he returned, he had a plastic bag in his hand that appeared to contain a handgun. The victim handed over the bicycle, which defendant placed in his truck and drove away. Defendant, who was on parole from the California Rehabilitation Center,

using PCP when he was 12 years old and then moved on to cocaine, heroin, LSD, methamphetamine, and marijuana; and injected a mixture of cocaine and heroin as his "drug of choice." He considered himself dependent on drugs, and had been dependent in the past. Defendant also stated he drank three-fifths of a gallon of whiskey a week, and drank wine and beer. CDCR reception center information showed defendant had a history of heart and kidney disease and that he claimed work experience in a walnut processing plant, laying train tracks, and field work.

Defendant's CDCR records contained several rules violation reports. In 1998, he was found guilty of possession of United States currency. In 1999, he was placed into administrative segregation pending investigation into allegations of narcotics trafficking in the prison's general population. In 2004, he was found guilty of mutual combat. He admitted punching the other inmate who, defendant said, was only defending himself. Defendant characterized the inmate as "a homeboy" who was irritating him. Staff had to use pepper spray and a baton strike to break up the fight. In 2006, a hypodermic syringe with a needle was found in the cell defendant shared with another inmate. Defendant admitted it was his, and said he found it in the garbage after a building search. In 2008, defendant was found guilty of possession of tobacco. In 2010, defendant was found guilty of circumventing medical procedures by diverting medication. Defendant acknowledged he was required to place his medication into his mouth, swallow it, and then allow the nurse to determine he had done so. In 2012, a random search of a cell assigned to defendant and another inmate revealed a garbage bag full of inmate-manufactured alcohol ("'pruno'"). Defendant stated the pruno was his. At the hearing, he pled guilty to possession of inmate-manufactured alcohol and stated, "'It wasn't mine, but I took it.'" The most recent rules violation report, dated January 1, 2013, was, again,

_____

pled no contest pursuant to *People v. West* (1970) 3 Cal.3d 595 in exchange for dismissal of a five-year enhancement.

5.

for circumventing medical procedures by diverting medication. Defendant stood in the pill line for his "'as needed'" morphine dose, placed the pill in his mouth and drank his water, but did not swallow the pill. Defendant was written up multiple times for failing to report or being late to class or to his work assignment, being out of bounds, not being in his cell during inmate count, violating grooming and cell regulations, and smoking (a violation of state law).

Defendant's most recent annual review, dated October 31, 2012, showed him in "Close B" custody. His placement score was 19, the mandatory minimum for a prisoner with a life sentence. His records contained numerous good reports from his prison work supervisors. They also contained verification of his participation in Narcotics Anonymous, Alcoholics Anonymous, and a victims' awareness program over various periods of time.[6] He also received a certificate of proficiency as a sewing machine operator.

Defendant's central file contained a therapeutic progress report, dated May 23, 2013, by Dr. Mathews, a clinical psychologist at the prison.[7] Mathews related defendant had been able to make "some true and substantial progress" in the four years she had been treating him, and had deepened his commitment to "making something better of himself." She found he was not as "materially- driven" as in the past, and although he had struggled with substance abuse issues, he had managed to successfully face them and was engaged in an ongoing dialogue with her about them. She believed defendant had

---

**6**    In February 2004, defendant was presented certificates of attendance attesting to his regular attendance of 25 months in Alcoholics Anonymous and Narcotics Anonymous.

**7**    Defendant's file also contained voluminous interdisciplinary progress notes that were listed as "Confidential Client/Patient Information." Although the court considered Mathews's written notes and live testimony, it sustained a claim of privilege with respect to the confidential records and did not consider them in reaching its decision. We neither summarize nor consider the confidential information.

"attained a maturity that has allowed him to no longer be the reactive, angry young man he once was." She believed he was now capable of delaying gratification. She opined he would make a good candidate for resentencing under the Act.

Mathews testified at the hearing. She had been defendant's primary treating mental health clinician since the spring of 2009. She concurred with defendant's previous clinician's diagnoses that defendant had a "mood disorder not otherwise specified" and polysubstance abuse in institutional remission.[8] Although defendant was prescribed various medications in the past, he had taken no psychotropic medications since Mathews had been treating him. Defendant's drug addiction involved multiple substances and reportedly dated from the age of about 10 to 11 years old. Mathews was aware defendant was prescribed morphine while on her caseload. She was concerned with morphine use because she believed it contributes to depression.

Mathews related she and defendant had long conversations about "his short fuse" and "his tendency to personalize things." She thought defendant had done "really well" developing the capacity to look at what was truly being said so as not to personalize comments. The major change Mathews saw in defendant was his ability to delay gratification. She found he did not have to have "some of the material comfort … he used to want and actively hustle to get" before he was incarcerated. Asked by defense counsel if she thought the court should have concerns regarding defendant's substance abuse if released, Mathews responded: "I think the Court would be wise to concern [itself] with whether or not he would have a stable environment. I think [defendant] is actually capable with very, very small amounts of money of getting back onto his feet because of his abilities and discussions with me about his interest and ideas and education

---

**8**     A diagnosis of mood disorder is not a major mental illness. It means people have fluctuating capacity to cope, moodiness, depression, anxiety, and sometimes difficulty sleeping.

and real estate. [¶] But … I don't feel good about him going out and not having a structure. My concern would be his just, kind of, floating out there and feeling overwhelmed by society after 17 years of incarceration." Mathews thought a sober living environment would be very important, and had discussed the possibility with defendant who seemed receptive to the idea. Mathews was of the opinion that anyone who had ever had a problem with substance abuse continued to have a problem, and she saw defendant as continuing to struggle in that respect.

Defendant testified at the hearing. He admitted having a longstanding drug problem, but denied possessing or consuming any medication not prescribed for him during the 17 years he had most recently been in prison, even though he could have obtained illicit drugs had he wanted to. Defendant was prescribed morphine from 2008 to 2013 because of spinal problems. He explained he did not immediately swallow his medication in the January 2013 incident, because his neck was swollen that morning. The nurse who reported him in 2010 and 2013 was a temporary nurse; defendant took his medication three times a day and never had a problem with the regular staff nurses. He denied the pruno was his; he took the blame because the inmate to whom it belonged had a parole hearing coming up. The syringe found in 2006 belonged to his cellmate, who was scheduled to go home in three days.

Defendant testified he would never again use drugs, because it had cost him too much. Although he would not have a problem if he were released, he would be willing to go into transitional housing. He had a means of support because he had won a civil judgment. He also had family in the Modesto area. He planned to get involved with his brother in buying, fixing up, and reselling foreclosed homes, and he also planned to do volunteer work.

The prosecutor argued that, based on the totality of the circumstances (defendant's prior criminal history, the circumstances of his commitment offense, his disciplinary record, and the fact he was still struggling with substance abuse), defendant remained a

danger to public safety. Defense counsel pointed to defendant's explanation for some of the disciplinary violations, and noted he had no write-ups for hiding or selling pills, and only one assaultive-type incident. She argued he was focused on the future and had participated in drug and alcohol programs as best he could, and argued nothing had been presented to show he would be a risk of danger should he be released.

The court took the matter under submission. On August 20, 2013, the court stated it had spent a significant amount of time reviewing the case file and records and considering the testimony presented. Based on "all of those things," it found "there is a risk of dangerousness" with which it was "not comfortable." It denied the petition for the reasons set out in its written ruling. That ruling read, in pertinent part:

> "The court places the burden of persuasion on the prosecution. That is, the state must convince the court, by a preponderance of the evidence, that to resentence a defendant as a 'second strike offender' would present an unreasonable risk of danger to the public. Unless the court finds the defendant presents such a danger, he or she *shall* be resentenced. The drafters of Penal Code section 1170.126 have given the court guidance on pertinent factors to consider. [¶] … [¶]

> "The district attorney focuses on the nature of defendant's prior criminal history, the facts and circumstances surrounding the life commitment offense, the defendant's disciplinary record while incarcerated, and his life - long substance abuse problems. The prosecution's position is that, when taken together, these factors demonstrate that resentencing [defendant] would pose an unreasonable risk of danger to public safety. In response, the defense called Dr. Mathews ….

> "The court finds Dr. Mathews['s] opinions regarding [defendant] to be unhelpful to [defendant]. The court notes that Dr. Mathews candidly admits that [defendant's] substance abuse is in institutional remission, and should concern the court. She further opined that [defendant] continues to have a substance abuse problem. Perhaps most importantly, Dr. Mathews diagnoses [defendant] with a mood disorder (NOS) that leaves [defendant] with a 'fluctuating ability to cope'. This, combined with his ongoing substance abuse problems, greatly concerns the court.

> "To the extent that Dr. Mathews characterizes [defendant's] commitment offense as relatively minor, the court strongly disagrees. A

9.

jury convicted [defendant] of felony evading …. As cited by the prosecutor, [defendant] has 'proved himself to be a threat to public safety and security'. His criminal career has been long and extensive. His prior serious felony convictions were residential burglaries. The court finds that those offenses do involve a high risk of physical danger, as did the evading offense. His record of rehabilitation while incarcerated is sparse. Indeed, he continues to receive disciplinary write - ups as recently as this year. The court further places little weight on [defendant's] explanation that he 'took the fall' for a fellow inmate on at least two occasions. [Defendant] admitted that he lied to prison authorities to achieve his goals, and the court has little doubt he would be dishonest here in an attempt to win his freedom.

"When taken together, the foregoing facts lead the court to find that the District Attorney has, by a preponderance of the evidence, met his burden of proof and persuasion. The court is convinced that [defendant] would present an unreasonable risk of danger to public safety if released."

## DISCUSSION

### I

### The Applicable Legal Principles

In order to be eligible for resentencing as a second strike offender under the Act, the inmate petitioner must satisfy the three criteria set out in subdivision (e) of section 1170.126.[9] (*People v. Superior Court* (*Martinez*) (2014) 225 Cal.App.4th 979, 989.) If the inmate satisfies all three criteria, as did defendant, he or she "shall be

---

[9] "An inmate is eligible for resentencing if: [¶] (1) The inmate is serving an indeterminate term of life imprisonment imposed pursuant to paragraph (2) of subdivision (e) of Section 667 or subdivision (c) of Section 1170.12 for a conviction of a felony or felonies that are not defined as serious and/or violent felonies by subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7. [¶] (2) The inmate's current sentence was not imposed for any of the offenses appearing in clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12. [¶] (3) The inmate has no prior convictions for any of the offenses appearing in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clause (iv) of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12." (§ 1170.126, subd. (e).)

resentenced [as a second strike offender] unless the court, in its discretion, determines that resentencing the [inmate] would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).) In exercising this discretion, "the court may consider: [¶] (1) The [inmate's] criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶] (2) The [inmate's] disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (*Id.*, subd. (g).)

A. **A TRIAL COURT'S ULTIMATE DETERMINATION REGARDING DANGEROUSNESS LIES WITHIN ITS DISCRETION; ITS RULING, THEREFORE, IS REVIEWED FOR ABUSE OF DISCRETION.**

Defendant argues the trial court's decision regarding dangerousness should be reviewed for substantial evidence.[10] We disagree. The plain language of subdivisions (f) and (g) of section 1170.126 calls for an exercise of the sentencing court's discretion. "'Discretion is the power to make the decision, one way or the other.' [Citation.]" (*People v. Carmony* (2004) 33 Cal.4th 367, 375.) "Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.

---

**10**    The substantial evidence test applies to an appellate court's review of findings made under the preponderance of the evidence standard. (*People v. Wong* (2010) 186 Cal.App.4th 1433, 1444.) Under that test, the appellate court reviews the record in the light most favorable to the challenged finding, to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could make the finding by a preponderance of the evidence. The appellate court "resolve[s] all conflicts in the evidence and questions of credibility in favor of the [finding], and … indulge[s] every reasonable inference the [trier of fact] could draw from the evidence. [Citation.]" (*Ibid.*)

[Citations.]' [Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125; see *People v. Williams* (1998) 17 Cal.4th 148, 162 [abuse-of-discretion review asks whether ruling in question falls outside bounds of reason under applicable law and relevant facts].)

Under the clear language of section 1170.126, the ultimate determination that resentencing would pose an unreasonable risk of danger is a discretionary one. We, therefore, review that determination for abuse of discretion. Of course, if there is no evidence in the record to support the decision, the decision constitutes an abuse of discretion. (See *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1066.)

### B. THE BURDEN OF PROOF BY PREPONDERANCE OF THE EVIDENCE APPLIES TO PROOF OF THE FACTS, NOT TO THE TRIAL COURT'S ULTIMATE DETERMINATION.

Defendant asserts a trial court cannot deny resentencing due to dangerousness unless the People have proved dangerousness beyond a reasonable doubt. The People contend their burden is preponderance of the evidence.[11]

> "The standard of proof, the United States Supreme Court has said, 'serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision.' [Citation.] At one end of the spectrum is the 'preponderance of the evidence' standard, which apportions the risk of error among litigants in roughly equal fashion. [Citation.] At the other end of the spectrum is the 'beyond a reasonable doubt' standard applied in criminal cases, in which 'our society imposes almost the entire risk of error upon itself.' [Citation.] Between those two standards is the intermediate standard of clear and convincing evidence. [Citation.] These three standards are codified in California's Evidence Code. Section 115 of that code states: 'The burden of proof may require a party to … establish the existence or nonexistence of a fact by a preponderance of the evidence, by clear and convincing proof, or by proof beyond a reasonable doubt. [¶] *Except as otherwise provided by law, the*

---

**11** The parties have assumed whatever burden exists is on the People. Case law supports that assumption. (E.g., *People v. Flores* (2014) 227 Cal.App.4th 1070, 1075-1076; *People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1301, fn. 25 (*Kaulick*).) The trial court here expressly placed the burden on the prosecution.

*burden of proof requires proof by a preponderance of the evidence*.'
(Italics added.)

"If the Legislature has not established a standard of proof, a court must determine the appropriate standard by considering all aspects of the law. [Citation.] No standard of proof is specified in section [1170.126] ….

"'The standard of proof that is required in a given instance has been said to reflect "… the degree of confidence our society thinks [the factfinder] should have in the correctness of factual conclusions for a particular type of adjudication." … The standard of proof may therefore vary, depending upon the gravity of the consequences that would result from an erroneous determination of the issue involved.' [Citations.]"
(*People v. Arriaga* (2014) 58 Cal.4th 950, 961-962.)

"In enacting section 1170.126 as part of Proposition 36, the issue before the voters was not whether a defendant could or should be punished more harshly for a particular aspect of his or her offense, but whether, having already been found to warrant an indeterminate life sentence as a third strike offender, he or she should now be eligible for a lesser term." (*People v. Osuna* (2014) 225 Cal.App.4th 1020, 1036.) Although voters could have permitted automatic resentencing, under any and all circumstances, of those eligible therefor, they did not do so. This demonstrates a recognition of two highly plausible scenarios: (1) Some inmates sentenced to indeterminate terms under the original version of the three strikes law for crimes not defined as serious or violent felonies may have started out not posing any greater risk of danger than recidivists who will now be sentenced to determinate terms as second strike offenders under the prospective provisions of the Act, but have become violent or otherwise dangerous while imprisoned, or (2) Enough time might have passed since some inmates committed their criminal offenses so that those offenses no longer make such inmates dangerous, but other factors do. Because of the severe consequences to society that may result if a dangerous inmate is resentenced as a second strike offender and released to the community upon completion of his or her term with little or no supervision (see, e.g., § 3451) and without undergoing any suitability assessment (see, e.g., *In re Lawrence*

13.

(2008) 44 Cal.4th 1181, 1204), we believe it appropriate to apportion the risk of error in roughly equal fashion.

Division Three of the Second District Court of Appeal has stated that, where a court's discretion under section 1170.126, subdivision (f) is concerned, the People bear the burden of proving "dangerousness" by a preponderance of the evidence. (*Kaulick*, *supra*, 215 Cal.App.4th at pp. 1301-1305 & fn. 25; see Evid. Code, § 115.) That court determined this is so because "dangerousness is not a factor which enhances the sentence imposed when a defendant is resentenced under the Act; instead, dangerousness is a hurdle which must be crossed in order for a defendant to be resentenced at all." (*Kaulick*, *supra*, at p. 1303.) *Kaulick* explained:

> "The maximum sentence to which Kaulick, and those similarly situated to him, is subject was, and shall always be, the indeterminate life term to which he was originally sentenced. While [the Act] presents him with an opportunity to be resentenced to a lesser term, unless certain facts are established, he is nonetheless still subject to the third strike sentence based on the facts established at the time he was originally sentenced. As such, a court's discretionary decision to decline to modify the sentence in his favor can be based on any otherwise appropriate factor (i.e., dangerousness), and such factor need not be established by proof beyond a reasonable doubt to a jury." (*Ibid.*)

In *People v. Blakely* (2014) 225 Cal.App.4th 1042, 1059-1062 (*Blakely*), we rejected the claim an inmate seeking resentencing pursuant to section 1170.126 had a Sixth Amendment right to a jury determination, beyond a reasonable doubt, on the question of conduct constituting a disqualifying factor. We concluded that *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*) and its progeny (e.g., *Alleyne v. United States* (2013) 570 U.S. ___ [133 S.Ct. 2151]; *Cunningham v. California* (2007) 549 U.S. 270 (*Cunningham*); *Blakely v. Washington* (2004) 542 U.S. 296) "do not apply to a determination of eligibility for resentencing under the Act." (*Blakely*, *supra*, 225 Cal.App.4th at p. 1060.) We also relied heavily on *Kaulick*.

In rejecting application of the beyond a reasonable doubt standard, *Kaulick* discussed the United States Supreme Court's conclusion in *Dillon v. United States* (2010) 560 U.S. 817, 828 (*Dillon*), that "a defendant's Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt do not apply to limits on downward sentence modifications due to intervening laws." [12] (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1304.) *Kaulick* found *Dillon*'s language applicable. Since the retrospective part of the Act is not constitutionally required, but an act of lenity on the part of the electorate and provides for a proceeding where the original sentence may be modified downward, any facts found at such a proceeding, such as dangerousness, do not implicate Sixth Amendment issues. Thus, there is no constitutional requirement that the facts be established beyond a reasonable doubt. (*Kaulick*, *supra*, at pp. 1304-1305.)

Although in *Blakely*, we applied *Kaulick*'s analysis to the initial determination of eligibility for resentencing under the Act (*Blakely*, *supra*, 225 Cal.App.4th at p. 1061), it applies equally to the issue whether resentencing the petitioner would pose an unreasonable risk of danger to public safety. A denial of an inmate's petition does not increase the penalty to which that inmate is already subject, but instead removes the inmate from the scope of an act of lenity on the part of the electorate to which he or she is not constitutionally entitled. (*Blakely*, *supra*, at p. 1062.) That the denial is based on a determination of dangerousness does not change that conclusion.

*Kaulick* found the prosecution bears the burden of establishing "dangerousness" by a preponderance of the evidence against a claim the *Apprendi* line of cases requires proof beyond a reasonable doubt. (*Kaulick*, *supra*, 215 Cal.App.4th at pp. 1301-1302.) As a result, it had no real occasion to address the interplay between the burden of proof

---

[12]     *Pepper v. United States* (2011) 562 U.S. 476 [131 S.Ct. 1229] does not undermine *Dillon*'s or *Kaulick*'s reliance thereon. Unlike *Dillon*, *Pepper* involved a plenary resentencing after the defendant's sentence had been set aside on appeal. (*Pepper*, *supra*, 562 U.S. at p. ___ [131 S.Ct. at p. 1236].)

and the trial court's exercise of discretion as that issue is presented here, or to clarify whether the prosecution is required to establish "dangerousness" in the sense of *facts* upon which the trial court can base the ultimate determination resentencing a petitioner would pose an unreasonable risk of danger to public safety, or in the sense of establishing that determination itself.[13] Nevertheless, we believe it supports our interpretation.

Accordingly, we hold preponderance of the evidence is the applicable standard of proof, regardless whether we analyze the issue as one of Sixth Amendment jurisprudence or due process. (See *People v. Flores*, *supra*, 227 Cal.App.4th at p. 1076.)[14]

This does not, however, mean the trial court must apply that standard in making its ultimate determination whether to resentence a petitioner, or we must review that determination for substantial evidence. Nor does it mean evidence of dangerousness must preponderate over evidence of rehabilitation for resentencing to be denied.

The language of section 1170.126, subdivision (f) expressly provides the petitioner shall be resentenced unless the court, in its discretion, makes a determination that resentencing would pose an unreasonable risk of danger. The statute does not say the petitioner shall be resentenced unless the People prove resentencing would pose such a risk.

---

[13]    As noted, *ante*, we have previously discussed *Kaulick* in the context of the initial determination whether an inmate is eligible for resentencing under the Act. (*Blakely*, *supra*, 225 Cal.App.4th at pp. 1058, 1060-1061; *People v. Osuna, supra,* 225 Cal.App.4th at pp. 1033, 1039-1040.) Nothing we say here should be taken as disagreement with or modification of those opinions. We deal here with a different aspect of the retrospective portion of the Act and a subject not before us in our prior cases.

[14]    We recognize that in the case of people who are involuntarily committed as narcotics addicts or for analogous reasons, the California Supreme Court has found the appropriate standard of proof to be beyond a reasonable doubt. (See, e.g., *People v. Thomas* (1977) 19 Cal.3d 630, 637-638.) Defendant received the protections of that standard of proof (and the right to a jury trial) at the time he was found to have suffered his prior strike convictions, however. (*People v. Nguyen* (2009) 46 Cal.4th 1007, 1015; *People v. Towers* (2007) 150 Cal.App.4th 1273, 1277.)

Considering the language of subdivisions (f) and (g) of section 1170.126, we conclude the People have the burden of establishing, by a preponderance of the evidence, facts from which a determination resentencing the petitioner would pose an unreasonable risk of danger to public safety can reasonably be made. The reasons a trial court finds resentencing would pose an unreasonable risk of danger, or its weighing of evidence showing dangerousness versus evidence showing rehabilitation, lie within the court's discretion. The ultimate determination that resentencing would pose an unreasonable risk of danger is a discretionary one. While the determination must be supported by facts established by a preponderance, the trial court need not itself find an unreasonable risk of danger by a preponderance of the evidence. (See *In re Robert L.*, *supra*, 21 Cal.App.4th at pp. 1065-1067 [discussing abuse of discretion and preponderance of the evidence standards].)

Such an interpretation is consistent with California's noncapital sentencing scheme.[15] Under the determinate sentencing law (DSL) as it existed prior to *Cunningham*, "three terms of imprisonment [were] specified by statute for most offenses. The trial court's discretion in selecting among [those] options [was] limited by section 1170, subdivision (b), which direct[ed] that 'the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime.'" (*People v. Black* (2007) 41 Cal.4th 799, 808, fn. omitted.) Trial courts had "broad discretion" to impose the lower or upper term instead of the middle term of imprisonment (*People v. Scott* (1994) 9 Cal.4th 331, 349), and generally were required by the statutes and sentencing rules to state reasons for their discretionary sentencing choices (*ibid.*). Such reasons had to be "supported by a preponderance of the evidence in the

---

[15]     The determination of the appropriate penalty in a capital case "'is "essentially moral and normative …, and therefore … there is no burden of proof or burden of persuasion. [Citation.]" [Citation.]' [Citations.]" (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1362.)

17.

record" and reasonably related to the particular sentencing determination. (*Ibid.*; see former Cal. Rules of Court, rule 4.420(b).) Even after the DSL was reformed and amended in response to *Cunningham*, so as to eliminate judicial factfinding in selection of the appropriate term when three possible prison terms are specified by statute, establishment of facts by a preponderance of the evidence remains necessary with respect to certain discretionary sentencing decisions. (See *In re Coley* (2012) 55 Cal.4th 524, 557-558.)**16**

In *People v. Sandoval* (2007) 41 Cal.4th 825, 850-851, the California Supreme Court stated that, in making its discretionary sentencing choices post-*Cunningham*, "the trial court need only 'state [its] reasons' [citation]; it is not required to identify aggravating and mitigating factors, *apply a preponderance of the evidence standard*, or specify the 'ultimate facts' that 'justify[] the term selected.' [Citations.] Rather, the court must 'state in simple language the primary factor or factors that support the exercise of discretion.' [Citation.]" (Italics added.)

The trial court's ultimate determination when considering a petition for resentencing under section 1170.126 is analogous to an evaluation of the relative weight of mitigating and aggravating circumstances. Such an evaluation "is not equivalent to a factual finding." (*People v. Black*, *supra*, 41 Cal.4th at p. 814, fn. 4.) It follows, then, that the trial court need not apply a preponderance of the evidence standard, in that it need not find resentencing the petitioner would, more likely than not, pose an

---

**16**     After *Cunningham* concluded the DSL violated a defendant's Sixth Amendment right to a jury trial (*Cunningham*, *supra*, 549 U.S. at p. 281), the Legislature amended section 1170 so that now "(1) the middle term is no longer the presumptive term absent aggravating or mitigating facts found by the trial judge; and (2) a trial judge has the discretion to impose an upper, middle or lower term based on reasons he or she states." (*People v. Wilson* (2008) 164 Cal.App.4th 988, 992.) Subdivision (b) of section 1170 states the court "shall select the term which, in the court's discretion, best serves the interests of justice."

18.

unreasonable risk of danger to public safety.  (See *Kaulick*, *supra*, 215 Cal.App.4th at p. 1305, fn. 28 [preponderance standard means "'more likely than not'"].)

To summarize, a trial court need not determine, by a preponderance of the evidence, that resentencing a petitioner would pose an unreasonable risk of danger to public safety before it can properly deny a petition for resentencing under the Act.  Nor is the court's ultimate determination subject to substantial evidence review.  Rather, its finding will be upheld if it does not constitute an abuse of discretion, i.e., if it falls within "the bounds of reason, all of the circumstances being considered.  [Citations.]"  (*People v. Giminez* (1975) 14 Cal.3d 68, 72.)  The facts or evidence upon which the court's finding of unreasonable risk is based must be proven by the People by a preponderance of the evidence, however, and are themselves subject to our review for substantial evidence.[17]  If a factor (for example, that the petitioner recently committed a battery, is violent due to repeated instances of mutual combat, etc.) is not established by a preponderance of the evidence, it cannot form the basis for a finding of unreasonable risk.  (See *People v. Cluff* (2001) 87 Cal.App.4th 991, 998 [trial court abuses its discretion when factual findings critical to decision find no support in record]; cf. *People v. Read* (1990) 221 Cal.App.3d 685, 689-691 [where trial court erroneously determined defendant was statutorily ineligible for probation, reviewing court was required to determine whether trial court gave sufficient other reasons, supported by facts of case, for probation denial].)

---

[17]    We agree with defendant that "substantial evidence," not the significantly more deferential "some evidence" standard applicable to review of executive branch decisions in parole cases (see *In re Rosenkrantz* (2002) 29 Cal.4th 616, 658, 665), is the appropriate appellate standard.

**C.** **SECTION 1170.126 DOES NOT ESTABLISH OR CONTAIN A PRESUMPTION A PETITIONER'S SENTENCE BE REDUCED.**

Defendant argues a section 1170.126 resentencing "is the converse of a *Romero* hearing and establishes a presumption that the life term be reduced to a second strike sentence." (Some capitalization & underscoring omitted.)

In *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*), the California Supreme Court held that trial courts retain discretion to strike, in furtherance of justice under section 1385, subdivision (a), prior felony conviction allegations in cases brought under the three strikes law. (*Romero*, *supra*, at pp. 529-530.) The court subsequently clarified, however, that in deciding whether to do so, "the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams*, *supra*, 17 Cal.4th at p. 161.)

Because the three strikes law was intended to restrict trial courts' discretion in sentencing repeat offenders, the state high court determined there were "stringent standards" sentencing courts must follow in order to find a defendant should be treated as falling outside the three strikes scheme. (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377.) The court explained:

> "[T]he three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so. In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper.
>
> "In light of this presumption, a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the

20.

court considered impermissible factors in declining to dismiss [citation]. Moreover, 'the sentencing norms [established by the Three Strikes law may, as a matter of law,] produce[] an "arbitrary, capricious or patently absurd" result' under the specific facts of a particular case. [Citation.]

"But '[i]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations. [Citation.] … Because the circumstances must be 'extraordinary … by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*People v. Carmony*, *supra*, 33 Cal.4th at p. 378.)

As we explained in *Blakely*, *supra,* 225 Cal.App.4th at page 1054, "The purpose of the three strikes law has been variously stated as being '"to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses"' [citation] and 'to promote the state's compelling interest in the protection of public safety and in punishing recidivism' [citation]. Although the Act 'diluted' the three strikes law somewhat [citation], '[e]nhancing public safety was a key purpose of the Act' [citation]." Because public safety remains a key purpose of the law under the Act, we reject defendant's assertion that a section 1170.126 proceeding is the converse of a *Romero* determination, so that any refusal to resentence an eligible inmate must be subjected to the same rigorous scrutiny as the granting of a *Romero* motion.[18]

---

**18** Because a trial court can deny resentencing under section 1170.126, subdivision (f), only upon a finding of unreasonable risk of danger to public safety, a trial court would abuse its discretion, as in a *Romero* situation, by refusing to resentence a petitioner because of antipathy toward the Act or a personal belief a particular defendant deserved an indeterminate term for reasons other than dangerousness. (See *People v. Williams, supra,* 17 Cal.4th at pp. 159, 161.)

21.

Relying on *People v. Guinn* (1994) 28 Cal.App.4th 1130, 1141-1142, 1145 and its progeny (e.g., *People v. Murray* (2012) 203 Cal.App.4th 277, 282; *People v. Ybarra* (2008) 166 Cal.App.4th 1069, 1089), all of which deal with section 190.5, subdivision (b),[19] defendant contends the "shall"/"unless" formulation employed in subdivision (f) of section 1170.126 "establishes a mandatory presumption of reduction of … [a] sentence, subject only to a limited exception for extraordinary cases of current dangerousness." (Some capitalization & underscoring omitted.)

The California Supreme Court recently disapproved the cases relied on by defendant. (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1370, 1387.) Leaving aside constitutional questions raised by establishing a presumption in favor of life without parole for juveniles after the United States Supreme Court's opinion in *Miller v. Alabama* (2012) 567 U.S. ___ [132 S.Ct. 2455], the state high court's review of the text of section 190.5, subdivision (b) led it to conclude the syntax is ambiguous concerning any presumption. The court stated: "It is not unreasonable to read this text … to mean that a court 'shall' impose life without parole unless 'at the discretion of the court' a sentence of 25 years to life appears more appropriate. [Citation.] But it is equally reasonable to read the text to mean that a court may select one of the two penalties in the exercise of its discretion, with no presumption in favor of one or the other. The latter reading accords with common usage. For example, if a teacher informed her students that 'you must take a final exam or, at your discretion, write a term paper,' it would be reasonable for the students to believe they were equally free to pursue either option. The text of

---

**19**     Section 190.5, subdivision (b) provides, in pertinent part: "The penalty for a defendant found guilty of murder in the first degree, in any case in which one or more special circumstances … has been found to be true …, who was 16 years of age or older and under the age of 18 years at the time of the commission of the crime, shall be confinement in the state prison for life without the possibility of parole or, at the discretion of the court, 25 years to life."

22.

section 190.5[, subdivision ](b) does not clearly indicate whether the statute was intended to make life without parole the presumptive sentence." (*People v. Gutierrez*, *supra*, 58 Cal.4th at p. 1371.)

The same example can be applied to the syntax of section 1170.126, subdivision (f). Thus, we do not agree with defendant that resentencing to a second strike term "is the 'generally mandatory' disposition, subject only to 'circumscribed' discretion to retain" the indeterminate third strike term. A court considering whether to resentence an eligible petitioner under section 1170.126, subdivision (f) has circumscribed discretion in the sense it can only refuse to resentence if it finds that to do so would pose an unreasonable risk of danger to public safety on the facts of the particular case before it. This does not mean, however, its discretion is circumscribed in the sense it can only find dangerousness in extraordinary cases. To the contrary, it can do so in any case in which such a finding is rational under the totality of the circumstances.

Such a conclusion comports with the plain language of the statute. Moreover, a conclusion resentencing to a second strike term is a generally mandatory presumption from which courts can depart only in extraordinary cases, as defendant asserts, would run directly contrary to the intent of the voters in passing the Act. (See *People v. Gutierrez*, *supra*, 58 Cal.4th at pp. 1371-1372 [examining legislative history and voter intent in attempt to resolve statutory ambiguity].) As we stated in *People v. Osuna*, *supra*, 225 Cal.App.4th at page 1036, "'[e]nhancing public safety was a key purpose of the Act' [citation]." Thus, although one purpose of the Act was to save taxpayer dollars (*People v. Osuna*, *supra*, at p. 1037), "[i]t is clear the electorate's intent was not to throw open the prison doors to *all* third strike offenders whose current convictions were not for serious or violent felonies, but *only* to those who were perceived as nondangerous or posing little or no risk to the public." (*Id*. at p. 1038, second italics added.) Had voters intended to permit retention of an indeterminate term only in extraordinary cases, they would have said so in subdivision (f) of section 1170.126, rather than employing language that

23.

affords courts broad discretion to find dangerousness. They also would not have afforded the trial court the power to consider any evidence it determined to be relevant to the issue as they did in subdivision (g)(3) of the statute.[20]

**D. THE FOCUS IN A SECTION 1170.126, SUBDIVISION (F) ANALYSIS, IS ON WHETHER PETITIONER *CURRENTLY* POSES AN UNREASONABLE RISK OF DANGER TO PUBLIC SAFETY.**

Defendant contends the trial court "must articulate a rational nexus" between the factors considered in its decision and current dangerousness "as with parole denials." (Some capitalization & underscoring omitted.)

In discussing the "some evidence" standard applicable in parole cases, the California Supreme Court has stated: "This standard is unquestionably deferential, but certainly is not toothless, and 'due consideration' of the specified factors requires more than rote recitation of the relevant factors with no reasoning establishing a rational nexus between those factors and the necessary basis for the ultimate decision — the determination of current dangerousness." (*In re Lawrence*, *supra*, 44 Cal.4th at p. 1210.)

---

[20] Defendant points to an article written by two of the authors of the Act, in which they assert the intent of Proposition 36 is that inmates will be entitled to resentencing in all but the rarest cases involving true risk to public safety. Assuming this material is properly before us, it does not help defendant, because it finds no support in either the language of section 1170.126 itself or in the ballot materials related to Proposition 36. For instance, although the "ARGUMENT IN FAVOR OF PROPOSITION 36" stated the measure had been "carefully crafted … so that truly dangerous criminals" would receive no benefits from the Act (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) argument in favor of Prop. 36, p. 52), it did not suggest dangerousness would properly be found only in rare cases. Thus, the authors' intent is not a reliable indicator of what voters intended. (See *People v. Garcia* (2002) 28 Cal.4th 1166, 1175-1176, fn. 5; *California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699-701; *Carleson v. Superior Court* (1972) 27 Cal.App.3d 1, 9, fn. 11; see also *People v. Rizo* (2000) 22 Cal.4th 681, 685.) Rather, the statutory language and ballot materials suggest voters intended resentencing would be denied in any case in which it would pose an unreasonable risk of danger to public safety, and they entrusted to their local judges the discretion to make that determination.

Although we decline to decide how and to what extent parole cases inform the decision whether to resentence a petitioner under the Act or our review of such a decision, we do agree with defendant that the proper focus is on whether the petitioner *currently* poses an unreasonable risk of danger to public safety. (Cf. *In re Shaputis* (2008) 44 Cal.4th 1241, 1254; *In re Lawrence*, *supra*, 44 Cal.4th at p. 1214.) We also agree a trial court may properly deny resentencing under the Act based solely on immutable facts such as a petitioner's criminal history "*only* if those facts support the ultimate conclusion that an inmate *continues* to pose an unreasonable risk to public safety. [Citation.]" (*In re Lawrence*, *supra*, at p. 1221.) "[T]he relevant inquiry is whether [a petitioner's prior criminal and/or disciplinary history], when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years [later]. This inquiry is … an individualized one, and cannot be undertaken simply by examining the circumstances of [the petitioner's criminal history] in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude. [Citation.]' [Citation.]" (*In re Shaputis*, *supra*, 44 Cal.4th at pp. 1254-1255.)

## II

## The Trial Court's Ruling

Applying the foregoing principles, we conclude defendant has not borne his burden on appeal of establishing the trial court's ruling exceeds the bounds of reason. Although appellant counsels us to remember that, if he were sentenced today for the same commitment offenses he could not be sentenced to a life term as a third strike offender, we note the same would be true of any prisoner eligible for resentencing under section 1170.126. Defendant also argues voters have determined prisoners like him do not pose an unreasonable risk of danger. If that were so, voters would not have given trial courts discretion to decide what evidence is relevant to such a determination, or to make such determination. We find those arguments unpersuasive.

25.

Here, the trial court clearly was aware it was required to find defendant currently posed an unreasonable risk to public safety. As the court stated in its written ruling, "Unless the court finds the defendant *presents* such a danger, he or she shall be resentenced." (Italics added & omitted.)

Additionally, the trial court's ruling conveyed reasoning which established a nexus between the evidence before it and current dangerousness. Defendant appears to contend an express statement of reasons supporting a finding of dangerousness is required, but section 1170.126 — in contrast to section 1385, subdivision (a) — contains no such requirement. The trial court's ruling here was more than adequate for meaningful appellate review, and "the application of reasoned analysis" is apparent from its ruling. (*In re Young* (2012) 204 Cal.App.4th 288, 306.) Moreover, the court did not merely rely on long-ago crimes, although defendant's criminal record certainly figured into its determination.

Defendant complains the trial court discounted or ignored any evidence favorable to him, such as the remoteness of his criminal offenses, his classification score, his health and age, and Mathews's assessment. These matters were all before the court, however, and the court expressly stated it had reviewed the case file and records and considered the testimony, and that its determination was "[b]ased on all of those things." Although it may not have expressly mentioned each piece of evidence individually, this does not mean it failed to consider all the evidence. In the absence of any showing to the contrary, we presume it did so. (Evid. Code, § 664; see *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; cf. *People v. Sparks* (1968) 262 Cal.App.2d 597, 600-601.) That defendant does not agree with the conclusion the court reached, or the weight or lack of weight it accorded to the various facts before it, does not mean the trial court erred.

Defendant argues the trial court erroneously framed the pertinent issue as an inquiry into the risk of recidivism in general, when it should have been looking at the likelihood of future violence. The court did not err. Section 1170.126, subdivision (f)

does not say a petitioner shall be resentenced unless the court determines resentencing the petitioner would pose an unreasonable risk of *violence*; rather, it speaks in terms of danger to public safety.[21]  That a crime (or criminal) can constitute a danger to public safety without being violent is too obvious to dispute (see, e.g., *People v. Hughes* (2002) 27 Cal.4th 287, 355; *People v. Villalobos* (2006) 145 Cal.App.4th 310, 317) and is recognized both by the three strikes law's inclusion as a strike, by reference to section 1192.7, subdivision (c)'s definition of a "serious felony," any first degree burglary, furnishing certain drugs to a minor, and grand theft involving a firearm (§§ 667, subd. (d)(1), 1170.12, subd. (b)(1), 1192.7, subd. (c)(18), (24) & (26)), and by section 1170.126, subdivision (e)(2)'s disqualification from eligibility for resentencing persons convicted of certain narcotics offenses (see §§ 667, subd. (e)(2)(C)(i), 1170.12, subd. (c)(2)(C)(i)).  Although the ballot materials concerning Proposition 36 focused on violent criminals, section 7 of the Act provides:  "This act is an exercise of the public power of the people of the State of California for the protection of the health, safety, and welfare of the people of the State of California, and shall be liberally construed to effectuate those purposes."  (Italics omitted.)  To condition resentencing denials upon the likelihood of future violence would run contrary to the language of section 1170.126, subdivision (f) and voters' intent, and would not effectuate the purposes of the Act.

Finally, defendant contends that, in light of the Act's express purpose of "a more rational and cost-effective allocation of the crippling expenses of California's prison

---

[21]     Words and phrases used in the Penal Code "must be construed according to the context and the approved usage of the language .…"  (§ 7, subd. 16.)  In interpreting a ballot initiative, we afford the words used their ordinary and usual meaning.  (*People v. Park* (2013) 56 Cal.4th 782, 796.)  "[S]afety" has been variously defined as "the condition of being safe: freedom from exposure to danger: exemption from hurt, injury or loss" (Webster's 3d New Internat. Dict. (1986) p. 1998) and "[t]he condition of being safe; freedom from danger, risk, or injury" (American Heritage Dict. (2d college ed. 1982) p. 1084).

system," trial courts are required to weigh fiscal considerations in deciding resentencing petitions, something the trial court here did not do. In our view, the notion that the cost of continued incarceration has some bearing on whether resentencing a particular inmate would pose an unreasonable risk of danger to public safety is a non sequitur. Although saving money is a goal of the Act, it does not override the primary purpose of the three strikes law and the Act as a whole — the protection of public safety. (See *People v. Osuna*, *supra*, 225 Cal.App.4th at pp. 1036-1038.) The trial court was not required to take the cost of continued imprisonment into account or undertake the equivalent of a cost-benefit analysis in determining whether resentencing defendant would pose an unreasonable risk of danger to public safety; the Act already did so, and the electorate has determined keeping criminals who pose an unreasonable risk of danger to public safety behind bars for their full three strikes sentence is more important than saving money.

## III[*]

## Section 1170.18, Subdivision (c)

On November 4, 2014, voters enacted Proposition 47, "the Safe Neighborhoods and Schools Act" (hereafter Proposition 47). It went into effect the next day. (Cal. Const., art. II, § 10, subd. (a).) Insofar as is pertinent here, Proposition 47 renders misdemeanors certain drug- and theft-related offenses that previously were felonies or "wobblers," unless they were committed by certain ineligible defendants. Proposition 47 also created a new resentencing provision — section 1170.18 — by which a person currently serving a felony sentence for an offense that is now a misdemeanor, may petition for a recall of that sentence and request resentencing in accordance with the offense statutes as added or amended by Proposition 47. (§ 1170.18, subd. (a).) A person who satisfies the criteria in subdivision (a) of section 1170.18 shall have his or her sentence recalled and be "resentenced to a misdemeanor … unless the court, in its

---

[*]      See footnote, *ante*, page 1.

28.

discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (*Id.*, subd. (b).)[22]

Hidden in the lengthy, fairly abstruse text of the proposed law, as presented in the official ballot pamphlet — and nowhere called to voters' attention — is the provision at issue in the present appeal. Subdivision (c) of section 1170.18 provides: "As used throughout this Code, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." Section 667, subdivision (e)(2)(C)(iv) lists the following felonies, sometimes called "super strike" offenses:

> "(I) A 'sexually violent offense' as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code.

> "(II) Oral copulation with a child who is under 14 years of age, and who is more than 10 years younger than he or she as defined by Section 288a, sodomy with another person who is under 14 years of age and more than 10 years younger than he or she as defined by Section 286, or sexual penetration with another person who is under 14 years of age, and who is more than 10 years younger than he or she, as defined by Section 289.

> "(III) A lewd or lascivious act involving a child under 14 years of age, in violation of Section 288.

> "(IV) Any homicide offense, including any attempted homicide offense, defined in Sections 187 to 191.5, inclusive.

> "(V) Solicitation to commit murder as defined in Section 653f.

> "(VI) Assault with a machine gun on a peace officer or firefighter, as defined in paragraph (3) of subdivision (d) of Section 245.

---

[22] Proposition 47 also created a process whereby eligible persons who have already completed their sentences may have the particular conviction or convictions designated as misdemeanors. (§ 1170.18, subds. (f), (g).)

"(VII) Possession of a weapon of mass destruction, as defined in paragraph (1) of subdivision (a) of Section 11418.

"(VIII) Any serious and/or violent felony offense punishable in California by life imprisonment or death."

The question is whether section 1170.18, subdivision (c) now limits a trial court's discretion to deny resentencing under the Act to those cases in which resentencing the defendant would pose an unreasonable risk he or she will commit a new "super strike" offense. Defendant says it does. The People disagree. We agree with the People.[23]

---

[23]    We solicited supplemental briefing concerning Proposition 47. Among the questions we asked counsel to answer were whether defendant met the criteria for resentencing under section 1170.18 and, if so, whether we needed to determine the applicability, if any, of section 1170.18, subdivision (c) to resentencing proceedings under section 1170.126. We are satisfied it is appropriate for us to reach the issue of applicability regardless of whether defendant might obtain resentencing under Proposition 47.

It appears that a number of inmates will be eligible to seek resentencing under both the Act and Proposition 47. Such an inmate need not wait to file a petition under Proposition 47 until the trial court's ruling on the inmate's petition under the Act is final. A trial court is not divested of jurisdiction over a Proposition 47 petition by the fact a petition under the Act is pending, whether in a trial court or a Court of Appeal, with respect to the same inmate. (Cf. *People v. Mayfield* (1993) 5 Cal.4th 220, 222-227; *People v. Johnson* (1992) 3 Cal.4th 1183, 1256-1257; *People v. Alanis* (2008) 158 Cal.App.4th 1467, 1472-1473.) While the general rule is that "an appeal from an order in a criminal case removes the subject matter of that order from the jurisdiction of the trial court [citations]" (*Anderson v. Superior Court* (1967) 66 Cal.2d 863, 865), the subject matter of a ruling on a petition under the Act is legally independent from a petition under Proposition 47 (see *People v. Superior Court* (*Gregory*) (2005) 129 Cal.App.4th 324, 332).

In light of the differences between the two proceedings — for instance, an inmate resentenced under Proposition 47 is generally subject to one year of parole (§§ 1170.18, subd. (d), 3000.08), while an inmate resentenced under the Act is subject to up to three years of postrelease community supervision (§ 3451; *People v. Tubbs* (2014) 230 Cal.App.4th 578, 585-586, petn. for review pending, petn. filed Nov. 12, 2014; *People v. Espinoza* (2014) 226 Cal.App.4th 635, 637-638) — we express no opinion concerning whether the granting of a Proposition 47 petition would render moot resentencing proceedings, whether in a trial court or on appeal, under the Act. Nothing we say should

30.

"'In interpreting a voter initiative …, we apply the same principles that govern statutory construction. [Citation.]' [Citation.] '"The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.]"' [Citation.]" (*People v. Superior Court* (*Cervantes*) (2014) 225 Cal.App.4th 1007, 1014.) Thus, in the case of a provision adopted by the voters, "their intent governs. [Citations.]" (*People v. Jones* (1993) 5 Cal.4th 1142, 1146.)

To determine intent, "'we look first to the words themselves. [Citations.]'" (*People v. Superior Court* (*Cervantes*), *supra*, 225 Cal.App.4th at p. 1014.) We give the statute's words "'a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language "in isolation." [Citation.] Rather, we look to "the entire substance of the statute … in order to determine the scope and purpose of the provision …. [Citation.]" [Citation.] That is, we construe the words in question "'in context, keeping in mind the nature and obvious purpose of the statute ….' [Citation.]" [Citation.] We must harmonize "the various parts of a statutory enactment … by considering the particular clause or section in the context of the statutory framework as a whole." [Citations.]' [Citation.]" (*People v. Acosta* (2002) 29 Cal.4th 105, 112.) We "accord[] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided.… [S]tatutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.]" (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.)

"'"When statutory language is clear and unambiguous, there is no need for construction and courts should not indulge in it." [Citation.]' [Citation.]" (*People v. Hendrix* (1997) 16 Cal.4th 508, 512.) On its face, "[a]s used throughout this Code," as

_____

be read as expressing any opinion concerning defendant's eligibility to seek, or the appropriate result should he seek, resentencing under Proposition 47.

employed in section 1170.18, subdivision (c), clearly and unambiguously refers to the Penal Code, not merely section 1170.18 or the other provisions contained in Proposition 47. (See *People v. Bucchierre* (1943) 57 Cal.App.2d 153, 164-165, 166; see also *Marshall v. Pasadena Unified School Dist.* (2004) 119 Cal.App.4th 1241, 1254-1255; *People v. Vasquez* (1992) 7 Cal.App.4th 763, 766.)

This does not mean, however, that the definition contained in section 1170.18, subdivision (c) must inexorably be read into section 1170.126, subdivision (f). (Cf. *Marshall v. Pasadena Unified School Dist.*, *supra*, 119 Cal.App.4th at p. 1255.) "The literal language of a statute does not prevail if it conflicts with the lawmakers' intent .… [Citations.]" (*People v. Osuna*, *supra*, 225 Cal.App.4th at pp. 1033-1034.) "'The apparent purpose of a statute will not be sacrificed to a literal construction.' [Citation.]" (*Cossack v. City of Los Angeles* (1974) 11 Cal.3d 726, 733.) Rather, "the literal meaning of a statute must be in accord with its purpose." (*People v. Mohammed* (2008) 162 Cal.App.4th 920, 927.) "[I]t is settled that the language of a statute should not be given a literal meaning if doing so would result in absurd consequences that the [voters] did not intend" (*In re Michele D.* (2002) 29 Cal.4th 600, 606), or would "frustrate[] the manifest purposes of the legislation as a whole .…" (*People v. Williams* (1992) 10 Cal.App.4th 1389, 1393.) "To this extent, therefore, intent prevails over the letter of the law and the letter will be read in accordance with the spirit of the enactment. [Citation.]" (*In re Michele D.*, *supra*, 29 Cal.4th at p. 606; accord, *People v. Ledesma* (1997) 16 Cal.4th 90, 95.)

Thus, "'we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. [Citations.]' [Citation.] We also '"refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet." [Citation.]' [Citation.]" (*People v. Osuna*, *supra*, 225 Cal.App.4th at p. 1034.) We

consider "the consequences that will flow from a particular interpretation" (*Dyna-Med, Inc. v. Fair Employment & Housing Com.*, *supra*, 43 Cal.3d at p. 1387), as well as "the wider historical circumstances" of the statute's or statutes' enactment (*ibid.*). "'Using these extrinsic aids, we "select the construction that comports most closely with the apparent intent of the [electorate], with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' [Citation.]" (*People v. Osuna*, *supra*, 225 Cal.App.4th at pp. 1034-1035.)

Proposition 47 and the Act address related, but not identical, subjects. As we explain, reading them together, and considering section 1170.18, subdivision (c) in the context of the statutory framework as a whole (see *People v. Acosta*, *supra*, 29 Cal.4th at p. 112; *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 658-659; *In re Cindy B.* (1987) 192 Cal.App.3d 771, 781), we conclude its literal meaning does not comport with the purpose of the Act, and applying it to resentencing proceedings under the Act would frustrate, rather than promote, that purpose and the intent of the electorate in enacting both initiative measures (see *People v. Disibio* (1992) 7 Cal.App.4th Supp. 1, 5).

As is evidenced by its title, the Act was aimed solely at revising the three strikes law. That law, as originally enacted by the Legislature, was described by us as follows:

> "Under the three strikes law, defendants are punished not just for their current offense but for their recidivism. Recidivism in the commission of multiple felonies poses a danger to society justifying the imposition of longer sentences for subsequent offenses. [Citation.] The primary goals of recidivist statutes are: '… to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. This segregation and its duration are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes. Like the line dividing felony theft from petty larceny, the point at which a recidivist will

33.

be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction.' [Citation.]

"By enacting the three strikes law, the Legislature acknowledged the will of Californians that the goals of retribution, deterrence, and incapacitation be given precedence in determining the appropriate punishment for crimes. Further, those goals were best achieved by ensuring 'longer prison sentences and greater punishment' for second and third 'strikers.'" (*People v. Cooper* (1996) 43 Cal.App.4th 815, 823-824.)[24]

A few months before the November 6, 2012, election, the California Supreme Court observed: "One aspect of the [three strikes] law that has proven controversial is that the lengthy punishment prescribed by the law may be imposed not only when … a defendant [who has previously been convicted of one or more serious or violent felonies] is convicted of another serious or violent felony but also when he or she is convicted of any offense that is categorized under California law as a felony. This is so even when the current, so-called triggering, offense is nonviolent and may be widely perceived as relatively minor. [Citations.]" (*In re Coley*, *supra*, 55 Cal.4th at pp. 528-529.)

Clearly, by approving the Act, voters resolved this controversy in favor of strike offenders. Thus, one of the "Findings and Declarations" of the Act stated the Act would "[r]estore the Three Strikes law to the public's original understanding by requiring life sentences only when a defendant's current conviction is for a violent or serious crime." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) text of proposed law, § 1, p. 105.) Nowhere, however, do the ballot materials for the Act suggest voters intended essentially

---

[24] The foregoing applies equally to the three strikes initiative measure that added section 1170.12 to the Penal Code. The following statement of intent preceded the text of the statute in Proposition 184, which was approved by voters on November 8, 1994: "'It is the intent of the People of the State of California in enacting this measure to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses.'" (See Historical and Statutory Notes, 50C West's Ann. Pen. Code (2004 ed.) foll. § 1170.12, p. 239.)

to open the prison doors to existing third strike offenders in all but the most egregious cases, as would be the result if the definition of "'unreasonable risk of danger to public safety'" contained in section 1170.18, subdivision (c) were engrafted onto resentencing proceedings under section 1170.126, subdivision (f). That voters did *not* intend such a result is amply demonstrated by the fact an indeterminate life term remains mandatory under the Act for a wide range of current offenses even if the offender does not have a prior conviction for a "super strike" offense (§§ 667, subd. (e)(2), 1170.12, subd. (c)(2)), and that an inmate is rendered ineligible for resentencing under section 1170.126 for an array of reasons beyond his or her having suffered such a prior conviction (§ 1170.126, subd. (e)(2)).

The Act clearly placed public safety above the cost savings likely to accrue as a result of its enactment. Thus, as we previously observed, uncodified section 7 of the Act provides: "This act is an exercise of the public power of the people of the State of California *for the protection of the health, safety, and welfare of the people of the State of California*, and shall be liberally construed to effectuate those purposes." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012), *supra*, text of proposed law, p. 110, original italics omitted, italics added.) As we explained in *People v. Osuna*, *supra*, 225 Cal.App.4th at page 1036, "Although the Act 'diluted' the three strikes law somewhat [citation], '[e]nhancing public safety was a key purpose of the Act' [citation]."

In contrast, Proposition 47 — while titled "the Safe Neighborhoods and Schools Act" — emphasized monetary savings. The "Findings and Declarations" state: "The people of the State of California find and declare as follows: [¶] The people enact the Safe Neighborhoods and Schools Act to ensure that prison spending is focused on violent and serious offenses, to maximize alternatives for nonserious, nonviolent crime, and to invest the savings generated from this act into prevention and support programs in K-12 schools, victim services, and mental health and drug treatment. This act ensures that sentences for people convicted of dangerous crimes like rape, murder, and child

35.

molestation are not changed." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of proposed law, § 2, p. 70.) Uncodified section 15 of the measure provides: "This act shall be broadly construed to accomplish its purposes," while uncodified section 18 states: "This act shall be liberally construed to effectuate its purposes." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, text of proposed law, p. 74.) Proposition 47 requires misdemeanor sentences for various drug possession and property offenses, unless the perpetrator has a prior conviction for a "super strike" offense or for an offense requiring sex offender registration pursuant to section 290, subdivision (c). (Health & Saf. Code, §§ 11350, subd. (a), 11357, subd. (a), 11377, subd. (a); §§ 459.5, subd. (a), 473, subd. (b), 476a, subd. (b), 490.2, subd. (a), 496, subd. (a), 666, subd. (b).) Section 1170.18 renders ineligible for resentencing *only* those inmates whose current offense would now be a misdemeanor, but who have a prior conviction for a "super strike" offense or for an offense requiring sex offender registration pursuant to section 290, subdivision (c). (§ 1170.18, subds. (a), (i).)

Nowhere in the ballot materials for Proposition 47 were voters given any indication that initiative, which dealt with offenders whose current convictions would now be misdemeanors rather than felonies, had any impact on the Act, which dealt with offenders whose current convictions *would still be felonies*, albeit not third strikes. For instance, the Official Title and Summary stated, in pertinent part, that Proposition 47 would "[r]equire[] resentencing for persons serving felony sentences for these offenses[, i.e., offenses that require misdemeanor sentences under the measure] unless court finds unreasonable public safety risk." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, official title and summary, p. 34.) In explaining what Proposition 47 would do, the Legislative Analyst stated: "This measure reduces penalties for certain offenders convicted of *nonserious and nonviolent property and drug crimes*. This measure also allows certain offenders *who have been previously convicted of such crimes* to apply for reduced sentences." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*,

36.

analysis of Prop. 47 by Legis. Analyst, p. 35, italics added.)  With respect to the resentencing provision, the Legislative Analyst explained:

> "This measure allows offenders *currently serving felony sentences for the above crimes*[, i.e., grand theft, shoplifting, receiving stolen property, writing bad checks, check forgery, and drug possession] to apply to have their felony sentences reduced to misdemeanor sentences.  In addition, certain offenders who have already completed a sentence for a felony that the measure changes could apply to the court to have their felony conviction changed to a misdemeanor.  However, no offender who has committed a specified severe crime could be resentenced or have their conviction changed.  In addition, the measure states that a court is not required to resentence an offender currently serving a felony sentence if the court finds it likely that the offender will commit a specified severe crime.  Offenders who are resentenced would be required to be on state parole for one year, unless the judge chooses to remove that requirement."  (*Id*. at p. 36, italics added.)

Similarly, the arguments in favor of and against Proposition 47 spoke in terms solely of Proposition 47, and never mentioned the Act.  The Argument in Favor of Proposition 47 spoke in terms of prioritizing serious and violent crime so as to stop wasting prison space "on petty crimes," stop "wasting money on warehousing people in prisons for nonviolent petty crimes," and stop California's overcrowded prisons from "incarcerating too many people convicted of low-level, nonviolent offenses."  (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, argument in favor of Prop. 47, p. 38.)  The Rebuttal to Argument Against Proposition 47 reiterated these themes, and never suggested Proposition 47 would have any effect on resentencing under the Act. (See Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, rebuttal to argument against Prop. 47, p. 39.)  Although the Rebuttal to Argument in Favor of Proposition 47 asserted 10,000 inmates would be eligible for early release under the measure, and that many of them had prior convictions "for serious crimes, such as assault, robbery and home burglary" (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, rebuttal to argument in favor of Prop. 47, p. 38), there is no suggestion the early release provisions

37.

would extend to inmates whose current offenses remained felonies under the Act. The same is true of the discussion of resentencing contained in the Argument Against Proposition 47. (Voter Information Guide, Gen. Elec. (Nov. 4, 2014), *supra*, argument against Prop. 47, p. 39.)

In light of the foregoing, we cannot reasonably conclude voters intended the definition of "'"unreasonable risk of danger to public safety'"' contained in section 1170.18, subdivision (c) to apply to that phrase as it appears in section 1170.126, subdivision (f), despite the former section's preamble, "As used throughout this Code .…" Voters cannot intend something of which they are unaware.

We are cognizant one of the Act's authors has taken the position Proposition 47's definition of "unreasonable risk of danger" applies to resentencing proceedings under the Act. (St. John & Gerber, *Prop. 47 Jolts Landscape of California Justice System* (Nov. 5, 2014) Los Angeles Times <http://www.latimes.com/local/politics/la-me-ff-pol-proposition47-20141106-story.html> [as of Dec. 17, 2014].) Looking at the information conveyed to voters, however, this clearly was not *their* intent and so an author's desire is of no import. (Cf. *People v. Garcia*, *supra*, 28 Cal.4th at pp. 1175-1176, fn. 5; *People v. Bradley* (2012) 208 Cal.App.4th 64, 83; *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 30.)

We are also mindful "it has long been settled that '[t]he enacting body is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted' [citation], 'and to have enacted or amended a statute in light thereof' [citation]. 'This principle applies to legislation enacted by initiative. [Citation.]' [Citation.]" (*People v. Superior Court* (*Cervantes*), *supra*, 225 Cal.App.4th at p. 1015; accord, *In re Lance W.* (1985) 37 Cal.3d 873, 890, fn. 11.) Thus, we presume voters were aware "unreasonable risk of danger to public safety," as used in section 1170.126, subdivision (f), had been judicially construed as not being impermissibly vague, but as nevertheless having no fixed definition. (*People v. Garcia* (2014) 230 Cal.App.4th 763,

38.

769-770, petn. for review pending, petn. filed Nov. 18, 2014; *People v. Flores*, *supra*, 227 Cal.App.4th at p. 1075.)  Because nowhere in the ballot materials for Proposition 47 was it called to voters' attention the definition of the phrase contained in section 1170.18, subdivision (c) would apply to resentencing proceedings under the Act, we simply cannot conclude voters intended Proposition 47 to alter the Act in that respect.  Voters are not asked or presumed to be able to discern all potential effects of a proposed initiative measure; this is why they are provided with voter information guides containing not only the actual text of such a measure, but also a neutral explanation and analysis by the Legislative Analyst and arguments in support of and in opposition to the measure.  As we have already observed, none of those materials so much as hinted that Proposition 47 could have the slightest effect on resentencing under the Act.  (Cf. *Marshall v. Pasadena Unified School Dist.*, *supra*, 119 Cal.App.4th at pp. 1255-1256 [legislative history of enactment included information bill would add definition of particular term to Public Contract Code].)[25]

We are asked to infer an intent to extend section 1170.18, subdivision (c)'s definition to proceedings under section 1170.126 because the phrase in question only appears in those sections of the Penal Code.  We cannot do so.  The only resentencing mentioned in the Proposition 47 ballot materials was resentencing for inmates whose current offenses would be reduced to *misdemeanors*, not those who would still warrant *second strike felony terms*.  There is a huge difference, both legally and in public safety risked, between someone with multiple prior serious and/or violent felony convictions whose current offense is (or would be, if committed today) a misdemeanor, and someone

---

[25]     For the same reasons, we reject any suggestion the definition contained in section 1170.18, subdivision (c) was intended to clarify the true meaning of "unreasonable risk of danger to public safety" as used in section 1170.126, subdivision (f).  (Cf. *Re-Open Rambla, Inc. v. Board of Supervisors* (1995) 39 Cal.App.4th 1499, 1511; *In re Connie M.* (1986) 176 Cal.App.3d 1225, 1238.)

whose current offense is a felony. Accordingly, treating the two groups differently for resentencing purposes does not lead to absurd results, but rather is eminently logical.

We recognize "[i]t is an established rule of statutory construction … that when statutes are *in pari materia* similar phrases appearing in each should be given like meanings. [Citations.]" (*People v. Caudillo* (1978) 21 Cal.3d 562, 585, overruled on another ground in *People v. Martinez* (1999) 20 Cal.4th 225, 229, 237, fn. 6 & disapproved on another ground in *People v. Escobar* (1992) 3 Cal.4th 740, 749-751 & fn. 5; see *Robbins v. Omnibus R. Co.* (1867) 32 Cal. 472, 474.) We question whether Proposition 47 and the Act are truly in pari materia: That phrase means "[o]n the same subject; relating to the same matter" (Black's Law Dict. (9th ed. 2009) p. 862), and the two measures (albeit with some overlap) address different levels of offenses and offenders. In any event, "canons of statutory construction are merely aids to ascertaining probable legislative intent" (*Stone v. Superior Court* (1982) 31 Cal.3d 503, 521, fn. 10); they are "mere guides and will not be applied so as to defeat the underlying legislative intent otherwise determined [citation]" (*Dyna-Med, Inc. v. Fair Employment & Housing Com.*, *supra*, 43 Cal.3d at p. 1391).

The Act was intended to reform the three strikes law while keeping intact that scheme's core commitment to public safety. Allowing trial courts broad discretion to determine whether resentencing an eligible petitioner under the Act "would pose an unreasonable risk of danger to public safety" (§ 1170.126, subd. (f)) clearly furthers the Act's purpose. Whatever the wisdom of Proposition 47's policy of near-universal resentencing where *misdemeanants* are concerned — and "[i]t is not for us to gainsay the wisdom of this legislative choice" (*Bernard v. Foley* (2006) 39 Cal.4th 794, 813) — constraining that discretion so that all but the worst *felony* offenders are released manifestly does not, nor does it comport with voters' intent in enacting either measure.

Accordingly, Proposition 47 has no effect on defendant's petition for resentencing under the Act. Defendant is not entitled to a remand so the trial court can redetermine

defendant's entitlement to resentencing under the Act utilizing the definition of "'unreasonable risk of danger to public safety'" contained in section 1170.18, subdivision (c).**26**

## DISPOSITION

The judgment is affirmed.

_____

DETJEN, J.

I CONCUR:

_____

LEVY, Acting P.J.

---

**26**     Recently, the Third District Court of Appeal held section 1170.18, subdivision (c)'s definition of "'unreasonable risk of danger to public safety'" does not apply retroactively to defendants whose petitions for resentencing under the Act were decided before the effective date of Proposition 47. (*People v. Chaney* (Dec. 1, 2014, C073949) ___ Cal.App.4th ___, ___-___ [2014 D.A.R. 15934, 15935-15936].) *Chaney* did not decide whether Proposition 47's definition applies prospectively to such petitions. (*Chaney, supra,* at p. ___, fn. 3 [2014 D.A.R. 15934, 15936, fn. 3].) Were we to conclude section 1170.18, subdivision (c) modifies section 1170.126, subdivision (f), we would agree with *Chaney* that it does not do so retroactively. We believe, however, that a finding of nonretroactivity inexorably leads to the possibility of prospective-only application, and that prospective-only application of Proposition 47's definition to resentencing petitions under the Act would raise serious, perhaps insurmountable, equal protection issues. "Mindful of the serious constitutional questions that might arise were we to accept a literal construction of the statutory language, and of our obligation wherever possible both to carry out the intent of the electorate and to construe statutes so as to preserve their constitutionality [citations]" (*People v. Skinner* (1985) 39 Cal.3d 765, 769), we rest our holding on the reasoning set out in our opinion, *ante*.

PEÑA, J.,

I concur in the judgment and the majority opinion with the exception of part III. I agree defendant may not take advantage of Proposition 47's[1] newly enacted definition of "unreasonable risk of danger to public safety," as provided in Penal Code section 1170.18, subdivision (c) (1170.18(c)). I do so not because there is any ambiguity in the language used in section 1170.18(c) or the notion that the statute does not mean what it says, i.e., that the new definition applies "throughout this Code." Rather, in my view, there is no indication the electorate, in enacting section 1170.18(c), intended it to apply retroactively to resentencing determinations under Proposition 36, the Three Strikes Reform Act of 2012 (the Act).

## I. After November 4, 2014, the definition of "unreasonable risk of danger" in Section 1170.18(c) applies throughout the Penal Code

Section 1170.18(c) provides: "As used throughout this Code, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667."

This section and subdivision were enacted on November 4, 2014, when California voters passed Proposition 47, long past the time of defendant's resentencing hearing. Unless the legislation was designed or intended to apply retroactively, the definition in section 1170.18(c) cannot apply to defendant. This is the only inquiry we must make to resolve the issue of whether the definition in section 1170.18(c) applies to defendant. However, the majority has opted to determine whether the new definition applies to any resentencing provisions under the Act, past, present, or future. I respectfully disagree with the majority's analysis and conclusion on this broader issue.

---

[1] The Safe Neighborhood and Schools Act (Prop. 47, as approved by voters, Gen. Elec. (Nov. 4, 2014)).

"'When construing a statute, we must "ascertain the intent of the Legislature so as to effectuate the purpose of the law."' [Citations.] '[W]e begin with the words of a statute and give these words their ordinary meaning.' [Citation.] 'If the statutory language is clear and unambiguous, then we need go no further.' [Citation.] If, however, the language supports more than one reasonable construction, we may consider 'a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' [Citation.] Using these extrinsic aids, we 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*People v. Sinohui* (2002) 28 Cal.4th 205, 211-212.)

Where the statutory language is so clear and unambiguous, there is no need for statutory construction or to resort to legislative materials or other outside sources. (*Quarterman v. Kefauver* (1997) 55 Cal.App.4th 1366, 1371.) Absent ambiguity, it is presumed the voters intend the meaning apparent on the face of an initiative measure, and the courts may not add to the statute or rewrite it to conform to a presumed intent not apparent in its language. (*People v. ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 301.)

In determining whether the words enacted here are unambiguous, we do not write on a blank slate. For example, in *Marshall v. Pasadena Unified School Dist.* (2004) 119 Cal.App.4th 1241, 1255, the court stated there "is nothing ambiguous about the phrase 'as used in this code.'" It held the definition of "Emergency, as used in this code" applied to the entire Public Contract Code, and it was not limited to a particular chapter, article, or division of that code. Also, in *People v. Bucchierre* (1943) 57 Cal.App.2d 153, 166, the court held: "The words 'as in this code provided' (Penal Code, § 182) refer to the Penal Code."

In a similar vein, the court in *People v. Leal* (2004) 33 Cal.4th 999, 1007-1008, applied the plain meaning rule as follows:

2.

"The statutory language of the provision defining 'duress' in each of the rape statutes is clear and unambiguous. The definition of 'duress' in both the rape and spousal rape statutes begins with the phrase, 'As used in this section, "duress" means ....' (§§ 261, subd. (b), 262, subd. (c).) This clear language belies any legislative intent to apply the definitions of 'duress' in the rape and spousal rape statutes to any other sexual offenses.

"Starting from the premise that in 1990 the Legislature incorporated into the rape statute a definition of 'duress' that already was in use for other sexual offenses, defendant argues that the Legislature must have intended its 1993 amendment of the definition of 'duress' in the rape statute, and the incorporation of this new definition into the spousal rape statute, to apply as well to other sexual offenses that use the term 'duress.' Defendant observes: 'The legislative history does not suggest any rationale for why the Legislature would want its 1993 amendment of the definition of "duress" to apply only to rape so that it would have one meaning when the rape statutes use the phrase "force, violence, duress, menace, or fear of immediate and unlawful bodily injury" but another, much more expansive meaning when the identical phrase is used in the statutes defining sodomy, lewd acts on a child, oral copulation and foreign object rape.'

"But the Legislature was not required to set forth its reasons for providing a different definition of 'duress' for rape and spousal rape than has been used in other sexual offenses; it is clear that it did so. 'When "'statutory language is … clear and unambiguous there is no need for construction, and courts should not indulge in it.'" [Citations.] The plain meaning of words in a statute may be disregarded only when that meaning is "'repugnant to the general purview of the act,' or for some other compelling reason …." [Citations.]' [Citation.] As we said in an analogous situation: 'It is our task to construe, not to amend, the statute. "In the construction of a statute … the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or omit what has been inserted …." [Citation.] We may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used.' [Citation.]"

The majority pays lip service to the plain meaning rule and then ignores it. While acknowledging the language used is unambiguous, it nonetheless engages in statutory construction to determine whether the electorate really intended to say what it actually enacted. The end result is a rewriting of the statute so that it comports with the majority's

3.

view of what the voters really intended. The majority has rewritten section 1170.18(c) so that it now states: "*As used in this section only*, 'unreasonable risk of danger to public safety' means …." The majority does so without providing a compelling reason to do so and without showing the plain language used has a "'meaning [that] is "'repugnant to the general purview of the act.'"'" (*People v. Leal*, *supra*, 33 Cal.4th at p. 1008.) Because the Act had not previously defined the phrase "unreasonable risk of danger to public safety," the definition in section 1170.18(c) cannot be repugnant or contradictory to the Act, nor does the majority claim the definition is repugnant to the general purview of Proposition 47. For these reasons, I respectfully disagree with the majority on this part of the opinion.

## II. Section 1170.18(c) has no application to defendant's resentencing under the Act

I do concur in the result because there is nothing in Proposition 47 to indicate the definition enacted under section 1170.18(c) is to be applied retroactively to defendant under the Act.

I begin my analysis with section 3 of the Penal Code, which provides that "[n]o part of it is retroactive, unless expressly so declared." "Whether a statute operates prospectively or retroactively is, at least in the first instance, a matter of legislative intent. When the Legislature has not made its intent on the matter clear," section 3 provides the default rule. (*People v. Brown* (2012) 54 Cal.4th 314, 319.) Proposition 47 is silent on the question of whether it applies retroactively to proceedings under the Act. The analysis of Proposition 47 by the legislative analyst and the arguments for and against Proposition 47 are also silent on this question. (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) pp. 34-39.) Because the statute contains no express declaration that section 1170.18(c) applies retroactively to proceedings under the Act, and there is no clearly implied intent of retroactivity in the legislative history, the default rule applies.

4.

Defendant cites *In re Estrada* (1965) 63 Cal.2d 740 to argue retroactive application.

In *Estrada*, the court stated:

> "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final. This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." (*In re Estrada*, *supra*, 63 Cal.2d at p. 745.)

One may argue that under the *Estrada* case, unless there is a "savings clause" providing for prospective application, a statute lessening punishment is presumed to apply to all cases not yet reduced to a final judgment on the statute's effective date. (*In re Estrada*, *supra*, 63 Cal.2d at pp. 744-745, 747-748.) However, the *Estrada* case has been revisited by our Supreme Court on several occasions. In *People v. Brown*, *supra*, 54 Cal.4th at page 324 the court stated: "*Estrada* is today properly understood, not as weakening or modifying the default rule of prospective operation codified in [Penal Code] section 3, but rather as informing the rule's application in a specific context by articulating the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments." "The holding in *Estrada* was founded on the premise that '"[a] legislative mitigation of the penalty *for a particular crime* represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law."'" (*Id.* at p. 325.) In *Brown*, the court did not apply the *Estrada* rule because "a statute increasing the rate at which prisoners may earn credits for good behavior does not

5.

represent a judgment about the needs of the criminal law with respect to a particular criminal offense, and thus does not support an analogous inference of retroactive intent." (*People v. Brown*, *supra*, at p. 325.)

Similarly here, *Estrada* does not control because applying the definition of "unreasonable risk to public safety" in Proposition 47 to petitions for resentencing under the Act does not reduce punishment for a particular crime. Instead, the downward modification of a sentence authorized by the Act is dependent not just on the current offense but on any number of unlimited factors related to the individual offender, including criminal conviction history, disciplinary and rehabilitation records, and "[a]ny other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (Pen. Code, § 1170.126, subd. (g)(3).)

For this reason also, defendant's argument his equal protection rights would be violated if he is denied retroactive application is unavailing. In light of the unlimited factors related to individual offenders that inform the exercise of discretion, no two individual offenders may be said to be similarly situated for purposes of resentencing under the Act. Unlike *In re Kapperman* (1974) 11 Cal.3d 542, upon which defendant relies, Proposition 47's new definition does not automatically confer a benefit such as credit for time served prior to commencement of their prison sentence to some prisoners and not others based solely on their commitment date.

Nor is this case similar to *Village of Willowbrook v. Olech* (2000) 528 U.S. 562 also relied upon by defendant. There, the plaintiff (Olech) alleged she was intentionally treated differently from others similarly situated and that there was no rational basis for the difference in treatment. Specifically, the defendant (Village) had intentionally demanded a 33-foot easement as a condition of connecting her property to the municipal water supply where the Village required only a 15-foot easement from other similarly situated property owners. After a three-month delay, Village relented and agreed to

provide water service with only a 15-foot easement. Olech also alleged Village was actually motivated by ill will resulting from Olech's prior filing of an unrelated and unsuccessful lawsuit against Village. The high court held that apart from the Village's subjective motivation, the fact the Village required a 33-foot easement from Olech as a condition for connecting her property while it required only a 15-foot easement from the other similarly situated property owners sufficiently stated a claim for relief under traditional equal protection analysis. (*Id*. at pp. 563-565.) Here, defendant has not shown he is similarly situated to others to whom the new definition has applied or may apply, nor has he established that he has been treated differently as a result of some arbitrary discrimination.

Because section 1170.18(c)'s definition of "unreasonable risk of danger to public safety" does not apply retroactively to the Act, the sentencing court applied the correct standard in exercising its discretion to not resentence defendant.[2] Since defendant has failed to show an abuse of that discretion, I concur in the majority's affirmance of the judgment.



PEÑA, J.

---

[2]Recently in *People v. Chaney* (Oct. 29, 2014 C073949) __ Cal.App.4th __ the Third District Court of Appeal held the definition of "unreasonable risk of danger to public safety" as provided in section 1170.18(c) does not apply retroactively. I agree.